IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **Center for Biological Diversity,**<br><br>    Plaintiff,<br><br>    v.<br><br>**United States Fish and Wildlife Service et al.,**<br><br>    Defendants,<br><br><br>    and,<br><br><br>CropLife America,<br><br>    Intervenor-Defendant. | Case No. 3:11-cv-5108-JSW<br><br>**Stipulation Amending Original Stipulated Settlement and [Proposed] Order** |

Plaintiff Center for Biological Diversity (the "Center"), Defendants the United States Fish and Wildlife Service ("FWS"), Dan Ashe, in his official capacity as Director of the Fish and Wildlife Service, the United States Environmental Protection Agency ("EPA"), and Gina McCarthy, in her official capacity as Administrator of EPA (collectively, the "Parties"), by and through the undersigned counsel, state as follows:

**Whereas,** the Parties entered into a stipulated settlement that resolved the remaining disputed issues in this case, and the Court entered the terms of that settlement as an order and dismissed this case without prejudice (while retaining continuing jurisdiction to enforce its order), Docket No. 76 (Nov. 4, 2013) ("Original Stipulated Settlement");

1

**Whereas,** that settlement requires FWS to complete consultation with EPA under the Endangered Species Act ("ESA") (and pursuant to the applicable regulations) on the potential effects of seven pesticides on the California red-legged frog by November of 2015, Stipulated Settlement ¶¶ 1, 2;

**Whereas,** EPA, the United States Department of the Interior, the United States Department of Commerce, and the United States Department of Agriculture ("USDA") had previously asked the National Academy of Sciences ("NAS") to evaluate the differing risk assessment approaches used by these agencies to identify the potential effects of pesticides on threatened and endangered species;

**Whereas,** the NAS responded to that request on April 30, 2013 by issuing a report entitled "Assessing Risks to Endangered and Threatened Species from Pesticides" (the "NAS report");

**Whereas,** the NAS report suggests, *inter alia*, that EPA, FWS, and the National Marine Fisheries Service ("NMFS") take a common approach to assessing the potential effects of pesticides on threatened and endangered species to facilitate coordination among federal agencies;

**Whereas,** EPA, FWS, NMFS, and the USDA are now working in close cooperation to evaluate and implement the recommendations made by the NAS report;

**Whereas,** based on the findings in the NAS report and the work done so far by the agencies to implement the recommendations in that report, the Parties now agree that it would be more efficient for EPA and FWS to consult on the potential effects that pesticides at issue in this case have on threatened and endangered species nationwide, instead of limiting their consultation only to potential effects on the California red-legged frog;

**Whereas,** EPA and FWS are working to complete such nationwide consultations on five (5) of the pesticides at issue in this case as part of the nationwide endangered species assessments that EPA will be conducting in connection with registration review under the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA");

**Whereas,** those five (5) pesticides are carbaryl, chlorpyrifos, diazinon, malathion, and methomyl;

**Whereas,** EPA and FWS currently expect to complete nationwide ESA consultations for three (3) of the five pesticides listed above by December 31, 2017 and for the remaining two (2) pesticides by December 31, 2018;

**Whereas,** the Parties agree that it would be more efficient to conduct nationwide consultations, instead of consultations limited to the California red-legged frog, but the agencies still face significant challenges in implementing the recommendations of the NAS report and completing such nationwide consultations;

**Whereas,** the Parties have now devised this stipulation to amend the Original Stipulated Settlement so that FWS will have an opportunity to attempt to complete the nationwide consultations described above, but which will still require FWS to complete the original consultations on the California red-legged frog if it is not able to complete nationwide consultations (although the schedule for such California red-legged frog consultations would be extended);

**Whereas,** the Parties reserved the right to ask this Court to modify the Original Stipulated Settlement "because of the Service's ongoing actions to comply with the ESA, to meet the requirements of other federal agencies or departments, or to deal with circumstances not presently anticipated."

Stipulated Settlement ¶ 5; and,

**Whereas,** Intervenor-Defendant CropLife America takes no position on the relief sought by this stipulation;

**Now, therefore, the Parties stipulate to amend the Original Stipulated Settlement as follows:**

1. The consultation schedule set out in paragraph 2 of the Original Stipulated Settlement is hereby suspended to allow the Federal agencies to engage in the nationwide consultations described above in the "whereas" clauses.

2. No provision of this Stipulation requires (or shall be construed to require) FWS or EPA to conduct the nationwide consultations described above in the "whereas" clauses, and no provision of this Stipulation requires (or shall be construed to require) FWS or EPA to complete any such nationwide consultations on the schedule set out above in the "whereas" clauses.

3. While it is not obligated to do so, if FWS completes nationwide consultations on the effects of the five (5) pesticides listed above on the schedule set out above in the "whereas" clauses, then FWS shall be deemed to have discharged its obligations under the terms of the Original Stipulated Settlement in full.

4. Alternatively, if:

(a) FWS does not complete nationwide consultations on the five (5) pesticides listed above on the schedule set out above in the "whereas" clauses;

(b) FWS concludes (based on further review of these issues) that nationwide consultations are no longer appropriate; or,

(c) FWS does not complete the interim benchmarks on the

estimated schedule described below in Paragraph 5, then:

  (1) at the request of either the Center or the Federal Defendants, the Parties shall meet and confer at the earliest available opportunity to discuss whether it is appropriate for FWS to complete the consultations "on the potential effects of seven pesticides on the California red-legged frog" described in Paragraph 1 of the Original Stipulated Settlement and, if so, to discuss an appropriate revised schedule for those consultations based on the schedule set out in Paragraph 2 of the Original Stipulated Settlement; and,

  (2) if the Parties are unable to reach agreement on that revised schedule within thirty (30) days of any such meeting and conference, either party may petition the Court to resolve the dispute and set a schedule for the remaining consultations "on the potential effects of seven pesticides on the California red-legged frog" described in Paragraph 1 of the Original Stipulated Settlement.

  5. Within 30 days of the Court's approval of the Amended Stipulated Settlement, FWS and EPA shall provide the Center (and Intervenor-Defendant) with an estimated schedule, including interim benchmarks, for completing the nationwide consultations described above in the "whereas" clauses. That schedule will include estimated dates for EPA's preliminary risk assessments (which include the draft biological evaluation ("BE")), EPA's submittal of the BE to FWS, FWS's draft biological opinions, and FWS's final biological opinions for each of these pesticides. The parties recognize that this schedule will be a good faith estimate as of the date that it is provided, but that the schedule may be subject to change (based on factors including, but not limited to, variations in the estimated dates for data

submission, the volume of public comments, and unanticipated legal obligations), and that, as stated above in Paragraph 2, this schedule will not be binding or enforceable by the Court.

6. FWS shall provide the Center (and Intervenor-Defendant) with an update by conference call every four (4) months describing the status of these consultations.

7. Within 30 days of the Court's approval of the amended Stipulated Settlement, FWS shall issue a press release that alerts the public to the amended Stipulated Settlement and shall make the following modifications to the webpage created pursuant to the first paragraph in Section 3 ("Web-site Content") of the Original Stipulated Settlement: i) summarize the principal terms of this amended Stipulated Settlement; and ii) include a hyperlink to the full text of this amended Stipulated Settlement. As for the webpage created pursuant to the second paragraph in Section 3 ("Web-site Content") of the Original Stipulated Settlement, FWS shall work with EPA to include on an appropriate, easily accessible Federal government website publicly-available documents associated with the nationwide consultation processes for the pesticides that are the subject of this stipulation, as well as the pesticides that are subject to this case, including preliminary risk assessments, biological evaluations, draft biological opinions, and proposed decisions that are subject to public comment. The webpage shall post the documents or links to websites containing the documents within 14 days of the date they become publicly available.

8. The first and second sentences of Paragraph 15 of the Original Stipulated Settlement are amended to read, in their entirety: "Upon entry of this Stipulated Settlement, Plaintiff's complaint shall be dismissed without prejudice. Plaintiff resolves its Complaint as to the five active ingredients

6

carbaryl, chlorpyrifos, diazinon, malathion, and methomyl, but Plaintiff reserves the right to bring a new Complaint regarding the 59 other active ingredients." This Stipulation does not amend the third sentence of Paragraph 15 of the Original Stipulated Settlement, which remains in effect.

9. Provisions of the Original Stipulated Settlement that are not directly amended by this Stipulated Settlement shall remain in effect.

10. This Stipulation has no precedential value and shall not be used as evidence in litigation or in any other context.

**PURSUANT TO STIPULATION, IT IS ORDERED** that the Settlement executed by the Parties is hereby incorporated into this Order; and

**IT IS FURTHER ORDERED** that this Court shall have continuing jurisdiction to enforce this Order and the terms of the Settlement herein consistent with the terms of that agreement; and

**IT IS FURTHER ORDERED** that this case is hereby **DISMISSED** without prejudice.

Dated: July 28, 2014

_____
Jeffrey S. White
United States District Judge

Respectfully submitted July 25, 2014,

SAM HIRSCH,

>Acting Assistant Attorney General
>United States Department of Justice
>Environment & Natural Resources Division

SETH M. BARSKY, Section Chief
S. JAY GOVINDAN, Assistant Section Chief

>*/s/ James A. Maysonett*
>_____

JAMES A. MAYSONETT, Senior Trial Attorney

>Wildlife & Marine Resources Section
>P.O. Box 7611, Washington D.C. 20044
>(202) 305-0216, facsimile (202) 305-0275
>james.a.maysonett@usdoj.gov

COUNSEL FOR FEDERAL DEFENDANTS


>*/s/ Collette Adkins Giese*
>_____


COLLETTE ADKINS GIESE (MN Bar # 035059X)
JUSTIN AUGUSTINE (CA Bar # 235561)

>CENTER FOR BIOLOGICAL DIVERSITY
>351 California Street, Suite 600
>San Francisco, CA 94104
>Telephone: (415) 436-9682
>Facsimile: (415) 436-9683
>jaugustine@biologicaldiversity.org
>cadkinsgiese@biologicaldiversity.org

ATTORNEYS FOR PLAINTIFF